# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

CLIVENS CELESTIN,

           Plaintiff,

 vs.                9:12-CV-1612 (GTS/ATB)

BRIAN FISCHER, *et al*,

           Defendants.

_____

CLIVENS CELESTIN, Plaintiff *pro se*
ADELE M. TAYLOR-SCOTT, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

  This matter has been referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and LOCAL RULES N.D.N.Y. 72.3(c). In this civil rights complaint, plaintiff alleges that defendants have violated his First Amendment right to practice his religion and his rights under the Religious Land Use and Institutionalized Persons Act, ("RLUIPA"), 42 U.S.C. § 2000cc-1(a) by denying his request for a "Religious Circumcision." (Compl. ¶ 6) (Dkt. No. 1). Plaintiff also includes an Equal Protection claim. Plaintiff seeks a substantial amount of monetary damages. (Compl. ¶ 8).

  Presently before the court is the defendants' motion to dismiss this action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 15). Plaintiff has responded in opposition to the defendants' motion. (Dkt. No. 16). For the following reasons, this court agrees with defendants and will recommend granting

their motion.

## DISCUSSION

**I.** **Facts**[1]

Plaintiff states that while he was confined at Upstate Correctional Facility ("Upstate"), he wrote to the Jewish chaplain[2] "and those responsible for my custody and control" to request a "religious circumcision." (Compl. ¶ 6). Plaintiff states that he was denied by the medical department on June 2, 2011. *Id.* He filed a grievance regarding the matter on June 21, 2011 that was denied on June 29, 2011. (Compl. ¶ 6 & CM/ECF p.10[3]). In his grievance, plaintiff complained that the refusal to perform the circumcision was discriminatory because he was a "black Jew," and plaintiff also claimed that the refusal was a "deprivation of medical care." (Compl. CM/ECF p.8). The grievance was denied, stating that DOCCS does not approve circumcisions for "non-medical reasons." (Compl. CM/ECF p. 10).

Plaintiff appealed the grievance, and the Superintendent affirmed the Inmate Grievance Review Committee ("IGRC") determination, stating that DOCCS does not

---

[1] For clarity, in this recitation of the facts, the court will incorporate facts that are found in plaintiff's grievances and letters that he attaches as part of his complaint. (Compl. CM/ECF pp. 8-25).

[2] Although plaintiff does not specify the name of this "Jewish chaplain" in the body of the complaint, the documents attached to the complaint indicate that plaintiff wrote to defendant Alec Friedman. Rabbi Friedman is listed as the Jewish Chaplain at Upstate in plaintiff's list of defendants. (Compl. ¶ 3(c)).

[3] This citation is to the Inmate Grievance Resolution Committee ("IGRC") denial dated June 29, 2011. The court has cited to the pages as assigned by the court's electronic filing system because plaintiff has not sequentially numbered the pages of his exhibits.

2

approve circumcisions for "personal" reasons, and plaintiff had no "medical" need for such a procedure. (Compl. CM/ECF p.11). The Central Office Review Committee ("CORC") affirmed the Superintendent's finding, "upon full hearing of the facts . . . and upon recommendation of the Division of Health Services." (Compl. CM/ECF p.12). The CORC decision also stated that there was no medical reason for the procedure, but if plaintiff wished to obtain a "second opinion" from an outside provider, he was welcome to do so as long as he assumed financial responsibility for the appointment. (Compl. CM/ECF p.12).

Plaintiff states that he wrote letters to all three defendants on March 6, 2012 and filed another grievance on March 21, 2012. (Compl. ¶ 6 & CM/ECF pp. 13, 14, 17, 19-20 (letters to defendants and to Joseph McCoy, Deputy Commissioner of Program Services), 21 (second grievance)). On March 26, 2012, plaintiff received a memorandum from M. Lira, Deputy Superintendent ("DS") for Programs, explaining that DOCCS considered his request "cosmetic" in nature, and a cosmetic procedure would not be paid for with New York State Funds. (Compl. CM/ECF p.18). DS Lira also stated that if plaintiff wished to pursue the request, he was free to do so, but he "must possess the funds to pay for it." (*Id.*) DS Lira told plaintiff that the Rabbi would be made aware of plaintiff's intentions so that the Rabbi could "follow through." (*Id.*)

The second grievance was denied, pointing out that plaintiff's first grievance asked for the same relief and had already been denied. (Compl. CM/ECF p.22). On May 14, 2012, Superintendent Rock affirmed the IGRC denial of plaintiff's second

grievance, stating that the grievance had been "reinvestigated" by Acting Nurse Administrator K. Rabideau. (Compl. CM/ECF p.23). Plaintiff was reminded that the staff found no medical necessity for a circumcision, but that plaintiff was free to request a second opinion at his own expense. (*Id.*) Defendant Rock also found no evidence to suggest any malfeasance by the staff. (*Id.*) The denial of the March 2012 grievance was affirmed by the CORC for the same reasons as the affirmance of the plaintiff's first grievance. (Compl. CM/ECF p.25). The grievance was unanimously denied as "without merit." (*Id.*)

## II. <u>Motion to Dismiss</u>

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat *pro se* pleadings with

4

liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). With this standard in mind, the court will turn to the individual claims remaining in plaintiff's action.

## III. Qualified Immunity

### A. Legal Standards

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether qualified immunity applies, the court may first consider whether "the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), modified by *Pearson v. Callahan*, 555 U.S. 223, 224 (2009) (holding that, "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory in all cases"). The Court may also examine "whether the right was clearly

5

established . . . in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. However, "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

In general, "the defense of qualified immunity cannot support the grant of a . . . 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir.1983). This is so because qualified immunity is an affirmative defense that must be pleaded by the official claiming it. *Stachell v. Dilworth*, 745 F.2d 781, 784 (2d Cir.1984) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). However, qualified immunity is immunity from suit rather than just a mere defense to liability, and the Supreme Court has stated that qualified immunity questions should be resolved at the earliest stage of the litigation. *K.D. ex rel Duncan v. White Plains School Dist.*, No. 11 Civ. 6756, 2013 WL 440556, at *10 (S.D.N.Y. Feb. 5, 2013) (citing *Anderson v. Creighton*, 483 U.S. 635 n.6 (1987); *Fabrikant v. French*, 691 F.3d 193, 212 (2d Cir. 2012)). Thus, the court may grant a motion to dismiss based on qualified immunity where the defense is based upon facts that appear on the face of the complaint. *Id.* (citing *Looney v. Black*, No. 11-3486, 2012 WL 6633949, at *8 (2d Cir. 2012)).

### B. Application

In this case, plaintiff asks only for monetary relief. Defendants argue that they are entitled to qualified immunity from any damages, based entirely upon the facts as stated in the complaint. Defendants argue that there is no constitutional right to a

religious circumcision, let alone a well-established constitutional right of which a reasonable defendant would have been aware.

In determining whether a particular right was well-established, the court looks to various factors:

1. whether the right was defined with reasonable clarity;

2. whether the Supreme Court or the Second Circuit has confirmed the existence of that right;

3. whether a reasonable defendant would have understood that his conduct was unlawful.

*Id.* (citing *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011)). The court must ask whether the right at issue was established "'in a particularized sense so that the contours of the right [were] clear to a reasonable official'" in light of the specific context of the case, "not as a broad general proposition." *Id.* (citing *Reichle v. Howards*, ___ U.S. ___, 132 S. Ct. 2088, 2094 (2012); *Phillips v. County of Orange*, No. 10 Civ. 0239, 2012 WL 4108113, at *28 (S.D.N.Y. Sept. 11, 2012)) (other citations omitted) (alteration in original). A case directly on point is not required, and the question is not whether an attorney would learn about the right from researching case law, but existing precedent must have "placed the statutory or constitutional question beyond debate." *Id.* (citing *Fabrikant*, 691 F.3d at 213). Only Supreme Court and Second Circuit precedent, existing at the time of the alleged violation is relevant in deciding whether the right is well established. *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004).

Recently, in *Vega v. Lantz*, No. 3:04-CV-121, 2012 WL 5831202, at *3 (D. Conn. Nov. 16, 2012), plaintiff requested a religiously-based circumcision. The court stated that it could "find no precedent that suggests – much less clearly establishes that a prisoner has a constitutional or statutory right to a surgery that is not medically necessary." The court in *Vega* held that because the plaintiff had no clearly established right to a circumcision, the defendants were entitled to qualified immunity.

Inmates have the right under the First and Fourteenth Amendments to freely exercise a chosen religion. *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). However this right is not limitless, and may be subject to restrictions relating to legitimate penological concerns. *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990). A review of the case law shows that there are very few cases that even mention circumcision, and in the Second Circuit, only *Vega* discussed the issue.

In *Muhammad v. Crosby*, No. 4:05-CV-193, 2009 WL 2913412, at *11-12 (N.D. Fla. Sept. 3, 2009), the court discussed the plaintiff's request to have religiously-mandated dental surgery. In denying plaintiff's RLUIPA claim, the court stated that if the court granted his request, it could lead to demands from other inmates to obtain other kinds of cosmetic services, or "perhaps other cosmetic surgery related to religious beliefs, such as *circumcision*." *Id.* at *12. The court found a "compelling" governmental interest in avoiding these problems and affirmed the denial of plaintiff's religiously-based request.

While the mention of circumcision was not central to the ruling in *Muhammad*,

8

there was certainly an implication that circumcision was one of those religiously-based, though "cosmetic," surgeries to which the plaintiff would not have been constitutionally or statutorily entitled, even under RLUIPA. Thus, *Vega* and *Muhammad* support this court's analysis, finding that the right to a religiously-based circumcision is not well-established. This court has found no other case, establishing that an inmate has a constitutional right to demand a surgery, religious or otherwise, that is not medically necessary, and the defendants in this case are entitled to qualified immunity on the section 1983 claim.

## IV. RLIUPA

### 1. Legal Standard

Defendants argue that because plaintiff is only seeking monetary relief, his RLUIPA claim must be dismissed because damages are not available against the State of New York under RLUIPA.

RLUIPA provides that

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person -

(A) is in furtherance of a compelling governmental interest; and

(B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). It has been held that money damages are not available against state defendants either in their individual or official capacities. *Loccenitt v.*

*City of New York*, No. 12 Civ. 948, 2013 WL 1091313, at *6 (S.D.N.Y. March 15, 2013) (citing *Pugh v. Goord*, 571 F. Supp. 2d 477, 506-507 (S.D.N.Y. 2008) (citing cases)).

### 2. Application

Plaintiff in this case has asked only for damages. He argues in his response that plaintiffs in other cases have been awarded "damages" in RLUIPA cases. (Dkt. No. 16 at 3). The cases plaintiff cites do not support his argument. Plaintiff claims that in *El Tabech v. Clarke*, No. 4:04-CV-3231, 2008 WL 1995304 (D. Neb. May 5, 2008), Mr. El-Tabech was awarded more than two hundred thousand dollars in "damages" in a RLUIPA case. However, plaintiff is incorrect. In *El Tabech v. Clarke*, plaintiff was awarded $208,856.00 in ***attorneys fees*** under 42 U.S.C. § 1988, ***not damages under RLUIPA***. The court awarded injunctive relief for plaintiff's success pursuant to the RLUIPA claim. In *El Tabech*, plaintiff filed the civil rights action under both 42 U.S.C. § 1983 and RLUIPA.

The same is true for the second case cited by plaintiff: *Hudson v. Dennehy*, 568 F. Supp. 2d 125, 126 (D. Mass. 2008). In *Hudson*, plaintiff was successful under RLUIPA, but only received injunctive relief. *Id.* The $237,299.00 was the award of attorneys fees, not an award of damages to plaintiff. *Id.* at 128. The court in *Hudson* specifically cited 42 U.S.C. § 1988(b) which provides for reasonable *attorneys fees* in any action or proceeding to enforce a provision of RLUIPA. *Id.* The court extensively discussed this section and its relationship to claims upon which the plaintiff was not successful. *Id.* at 130. Thus, *Hudson* does not support plaintiff's claim that damages

may be awarded under RLUIPA.

## CONCLUSION

The court is recommending dismissal of plaintiff's complaint under section 1983 because, first, although damages could be available under that section, the defendants are entitled to qualified immunity from damages. Second, plaintiff did not ask for injunctive relief, and did not sue defendants in their official capacities, therefore, he may not proceed under either section 1983[4] or RLUIPA for injunctive relief.

Although this court is recommending dismissal of this action for the reasons stated above, the Second Circuit has cautioned that a court should not dismiss a pro se litigant's action without granting leave to amend at least once if there is any indiction that a valid claim might be stated. *Branum v. Clark*, 927 F.2d 698, 704-705 (2d Cir. 1991). Thus, in this case, this court will recommend granting defendants' motion, but will recommend dismissing the action without prejudice to a properly supported motion to amend that cures the deficiencies noted above.

---

[4] The state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995) (citing *Will v. Michigan Department of Police*, 491 U.S. 58, 71 (1989)). This is true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983. *Id.* at 815 n.3. An action against state officers in their official capacities is tantamount to an action against the state. *Yorktown Medical Laboratory, Inc. v. Perales*, 948 F.2d 84, 87 & n.1 (2d Cir. 1991) (citations omitted). Thus, the Eleventh Amendment would have precluded a claim for damages under section 1983 against defendants in their official capacities. However, qualified immunity would not have precluded plaintiff from bringing claims for declaratory or injunctive relief under section 1983 against defendants in their official capacities. *See Griffin v. Alexander*, No. 9:09-CV-1334, 2011 WL 4402119, at *11 (N.D.N.Y. Aug. 25, 2011), *RR adopted*, 2011 WL 4343199 (N.D.N.Y. Sept. 14, 2011), *aff'd*, 466 F. App'x 26 (2d Cir. 2012).

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 15) be **GRANTED**, and the complaint **DISMISSED WITHOUT PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **fourteen (14) days** within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), & 6(e).

Dated: April 11, 2013

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge